# Matter of E-F-H-L-, Respondent

*Decided June 12, 2014*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

In the ordinary course of removal proceedings, an applicant for asylum or for withholding or deferral of removal is entitled to a hearing on the merits of those applications, including an opportunity to provide oral testimony and other evidence, without first having to establish prima facie eligibility for the requested relief. *Matter of Fefe*, 20 I&N Dec. 116 (BIA 1989), followed.

FOR RESPONDENT: Frances M. Cruz, Esquire, Dallas, Texas

BEFORE: Board Panel: GREER and WENDTLAND, Board Members; DONOVAN, Temporary Board Member.

WENDTLAND, Board Member:

In a decision dated September 4, 2012, an Immigration Judge denied the respondent's applications for asylum and withholding of removal under sections 208 and 241(b)(3) of the Immigration and Nationality Act, 8 U.S.C. §§ 1158 and 1231(b)(3) (2012). The Immigration Judge found that the respondent's written asylum application and prehearing brief did not demonstrate his prima facie eligibility for relief and determined that he was therefore not entitled to a hearing on the merits of his applications. The respondent has appealed from that decision. Because we conclude on de novo review that this resolution was legally erroneous, we will remand the record for the Immigration Judge to conduct a full hearing.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of Honduras who entered the United States without inspection on June 1, 2011. In proceedings before the Immigration Judge, the respondent submitted his applications for asylum and withholding of removal.

According to the respondent's asylum application, his uncle was murdered in Honduras during a fight over a card game by a member of another family that had threatened the respondent's family in the past because of a land dispute. Several days after his uncle's murder, the parents of his uncle's killer were reportedly murdered. The uncle's killer

and his family allegedly believed that because the respondent's mother was in the United States, she had the economic means to hire individuals to carry out retaliatory killings. When the respondent and his brother were subsequently living with their grandparents, their home and barn were burned down, purportedly by his uncle's killer. The respondent and his brother received death threats and were later shot at in front of a house where they had gone to live in hiding.

In addition to the respondent's asylum application, the Immigration Judge received into the record the Notice to Appear (Form I-862), the court's "frivolous asylum" warnings, and two evidentiary exhibits—one consisting of the respondent's uncle's alleged death certificate and the other containing two photographs. Prehearing briefs were also requested and received from the parties.[1]

The Immigration Judge declined to hold a hearing on the merits of the respondent's asylum application. Instead, he concluded as a matter of law that the respondent was unable to demonstrate that his proposed particular social group—members of a family that is persecuted because of its property ownership in its hometown in Honduras—was cognizable for purposes of establishing that he qualifies as a "refugee" under section 101(a)(42) of the Act, 8 U.S.C. § 1101(a)(42) (2012). For the reasons that follow, we conclude that the Immigration Judge erred in adjudicating the merits of the respondent's applications for asylum and withholding of removal without first conducting a full evidentiary hearing to allow the respondent to present oral testimony and any other available evidence.

## II. ANALYSIS

Our analysis begins with the language of section 240(b)(4)(B) of the Act, 8 U.S.C. § 1229a(b)(4)(B) (2012), which governs procedures in removal proceedings. With an exception that pertains to national security information, which is not implicated here, the statute provides that a respondent in removal proceedings "shall have a reasonable opportunity to examine the evidence against the alien, to present evidence on the alien's own behalf, and to cross-examine witnesses presented by the Government."

---

[1] In its prehearing brief, the Department of Homeland Security indicated that it would state a position on the respondent's claimed particular social group after he was permitted to testify in support of his application and was subjected to cross-examination. No brief was filed in response to the respondent's appeal. Thus, the parties apparently agree that the respondent should have been given an opportunity to present his testimony prior to a ruling on his eligibility for relief. In any event, such agreement between the parties is not necessary to our determination in this case.

*Id.* In addition, section 240(c)(4)(B), which sets forth standards for evaluating whether the respondent has met the burden of proof on any applications for relief, states that the Immigration Judge should determine whether the testimony of the respondent and any witnesses is credible and "weigh the credible testimony along with other evidence of record."

The regulations implementing these statutory provisions in the context of asylum and withholding of removal applications also provide that such applications for relief filed with the Immigration Court will be decided "after an evidentiary hearing to resolve factual issues in dispute," 8 C.F.R. § 1240.11(c)(3) (2013), and that at such an evidentiary hearing, the respondent "shall be examined under oath on his or her application and may present evidence and witnesses in his or her own behalf," 8 C.F.R. § 1240.11(c)(3)(iii). Those regulations also apply to applications for withholding or deferral of removal under the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, *adopted and opened for signature* Dec. 10, 1984, G.A. Res. 39/46, 39 U.N. GAOR Supp. No. 51, at 197, U.N. Doc. A/RES/39/708 (1984) (entered into force June 26, 1987; for the United States Apr. 18, 1988) ("Convention Against Torture"). *See Matter of C-B-*, 25 I&N Dec. 888, 890−91 (BIA 2012).

These regulations clearly give the Immigration Judge "the authority . . . to properly control the scope of any evidentiary hearing," 8 C.F.R. § 1240.11(c)(3)(ii), and to discontinue an evidentiary hearing once he or she determines that a mandatory denial of an application for asylum or withholding of removal is required. 8 C.F.R. § 1240.11(c)(3). However, we conclude that this authority to control the scope of an evidentiary hearing in the interests of efficiency, including by limiting testimony and focusing issues, is necessarily premised on the existence of an evidentiary hearing, which, at a minimum, must include an opportunity for the respondent to present evidence and witnesses in his or her own behalf.

In this case, the Immigration Judge erred in denying the respondent's applications for asylum and withholding of removal without first conducting an evidentiary hearing or giving him an opportunity to present evidence or witnesses in his behalf. The Immigration Judge's ruling was not premised on a mandatory bar to asylum or withholding of removal, and significant factual issues remained in dispute. *See* 8 C.F.R. § 1240.11(c)(3).[2]

---

[2] Even where an Immigration Judge is inclined to conclude that a mandatory bar applies, the statutory and regulatory provisions require the Immigration Judge to conduct a full evidentiary hearing on any disputed factual issues related to *that* question.

We have previously addressed the procedural requisites for adjudication of an application for relief from removal, particularly those relating to applications for asylum and for withholding or deferral of removal or deportation. In *Matter of Fefe*, 20 I&N Dec. 116, 118 (BIA 1989), we held that the regulations then in effect required that an applicant for asylum or withholding must, at the very least, have been questioned under oath to determine whether the information in the written application was complete and correct before the Immigration Judge adjudicated the application on the merits. In addition, we found that in the ordinary case, a full oral examination of the applicant—over and above the preliminary questioning described above—was "an essential aspect of the asylum adjudication process for reasons related to fairness to the parties and to the integrity of the asylum process itself."[3] *Id.*

We observed that it may be difficult for a respondent to meet the burden of proof for asylum that we articulated in *Matter of Mogharrabi*, 19 I&N Dec. 439, 445 (BIA 1987), without presenting oral testimony that is consistent with and corroborates the respondent's prior written statements. *Matter of Fefe*, 20 I&N Dec. at 118 (citing Office of the United Nations High Commissioner for Refugees, *Handbook on Procedures and Criteria for Determining Refugee Status Under the 1951 Convention and the 1967 Protocol Relating to the Status of Refugees* paras. 199−200 at 47−48 (Geneva, 1979)). We also acknowledged that an applicant's testimony can either help or hinder the case in ways that cannot be predicted before the testimony is taken. Thus, we noted that in some cases, significant differences between written and oral statements will arise that would not have been detected unless the applicant was subjected to direct examination but that in others an applicant "may establish[] eligibility for asylum by means of his oral testimony when such eligibility would not have been established by the documents alone." *Id.*

Relative to this point, the Board and the circuit courts have recognized that in certain circumstances, the facts underlying an application for relief from removal may continue to develop up to the time of, and even during, the final individual hearing on the merits. For example, if an applicant omits relevant facts from a written asylum application but subsequently testifies to those facts before the Immigration Judge, the omission from the

---

[3]   We also recognized that where "the parties stipulate[d] that the applicant's testimony would be entirely consistent with the written materials and that the oral statement would be believably presented," a full examination of the applicant might not be strictly required. *Matter of Fefe*, 20 I&N Dec. at 118. However, we note that even this limited exception still requires the applicant to testify under oath as to the correctness and completeness of the application.

written application does not necessarily support a finding that the applicant has not testified credibly, especially where the omission is explained to the Immigration Judge's satisfaction. *See generally Litvinov v. Holder*, 605 F.3d 548, 555−56 (8th Cir. 2010); *Hoxha v. Gonzales*, 446 F.3d 210, 214, 217−18 (1st Cir. 2006); *Arulampalam v. Ashcroft*, 353 F.3d 679, 688 (9th Cir. 2003); *Matter of A-S-*, 21 I&N Dec. 1106 (BIA 1998). We have also held that an applicant's failure to file certain documentary evidence by a deadline set by the Immigration Judge may warrant exclusion of the specific untimely documents from the evidentiary record, but it cannot support a decision by the Immigration Judge to deem the timely filed underlying application to be abandoned without a full evidentiary hearing on the merits. *Matter of Interiano-Rosa*, 25 I&N Dec. 264, 266 (BIA 2010).

The result in *Matter of Fefe* rested on the regulatory requirements that an applicant for asylum and withholding of deportation "shall be examined in person by an immigration officer or judge prior to adjudication of the asylum application," 8 C.F.R. § 208.6 (1988), and that the applicant "shall be examined under oath" and be given an opportunity to present evidence concerning his applications, 8 C.F.R. §§ 236.3(a)(2), 242.17(c) (1988). Those regulations have been replaced and are no longer in effect. *See* Aliens and Nationality; Asylum and Withholding of Deportation Procedures, 55 Fed. Reg. 30,674, 30,680−81, 30,686−87 (July 27, 1990) (revising 8 C.F.R. §§ 208.6, 236.3(a)(2), and 242.17(c)); *see also* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10,312, 10,369−70 (Mar. 6, 1997) (proposing the current regulations).

However, the current regulations similarly require that applications for asylum and withholding of removal will be decided by the Immigration Judge "after an evidentiary hearing to resolve factual issues in dispute," 8 C.F.R. § 1240.11(c)(3), and that during the removal hearing, the applicant "shall be examined under oath on his or her application and may present evidence and witnesses in his or her own behalf." 8 C.F.R. § 1240.11(c)(3)(iii). This language does not differ in any material respect from that in the prior regulations. We therefore see no reason to disturb our conclusion in *Fefe*, which, in turn, provides strong support for concluding that a full evidentiary hearing is ordinarily required prior to the entry of a decision on the merits of an application for asylum, withholding of removal under the Act or the Convention Against Torture, or deferral of removal under the Convention Against Torture.

We also find support for this requirement in the Immigration Judge's duty to fully develop the record. *See* section 240(b)(1) of the Act (requiring Immigration Judges to "interrogate, examine, and cross-examine the alien

and any witnesses"); *Sankoh v. Mukasey*, 539 F.3d 456, 467 (7th Cir. 2008); *Islam v. Gonzales*, 469 F.3d 53, 55 (2d Cir. 2006); *Mekhoukh v. Ashcroft*, 358 F.3d 118, 129 & n.14 (1st Cir. 2004); *cf. Oshodi v. Holder*, 729 F.3d 883, 889−93 (9th Cir. 2013) (en banc) (holding that an alien's Fifth Amendment due process right to a full and fair hearing, which includes the opportunity to present evidence and testify on one's behalf, was violated where the Immigration Judge denied relief solely on an adverse credibility finding after refusing to allow the alien to testify to the contents of his applications).

We conclude that in the ordinary course of removal proceedings, an applicant for asylum or for withholding or deferral of removal is entitled to a hearing on the merits of the applications, including an opportunity to provide oral testimony and other evidence, without first having to establish prima facie eligibility for the requested relief. *See* sections 240(b)(4)(B), (c)(4)(B) of the Act; *Matter of Fefe*, 20 I&N Dec. at 118; 8 C.F.R. § 1240.11(c)(3); *cf. Matter of Ruiz*, 20 I&N Dec. 91, 93 (BIA 1989) (holding that in absentia proceedings should have been reopened once the alien established reasonable cause for his failure to appear, because he retained the right to present his asylum claim at a full evidentiary hearing, regardless of whether prima facie eligibility for relief had been shown). Accordingly, we will remand the record for the Immigration Judge to conduct a hearing on the merits of the respondent's applications for asylum and withholding of removal.

**ORDER:** The record is remanded to the Immigration Judge for further proceedings consistent with the foregoing opinion and for the entry of a new decision.